Matter of STANDARD GAS and
ELECTRIC COMPANY
and
Standard Power and Light Corporation.
Civ. A. No. 1497.

United States District Court
D. Delaware.
April 13, 1956.

Ellwood L. Englander, Robert S. Keebler and Arthur J. Buswell, Washington, D. C., for Securities and Exchange Commission.

Paul D. Miller (of Mudge, Stern, Baldwin & Todd), New York City, for Standard Gas & Electric Co.

John J. Morris, Jr. (of Morris, James, Hitchens & Williams), Wilmington, Del., for James P. McGranery.

George Rosier and Victor Brudney, New York City, for Standard Power & Light Corp.

LEAHY, Chief Judge.

This is an application by the Securities and Exchange Commission for the approval of a facet of the plan of liquidation of Standard Gas and Electric Company and Standard Power and Light Corporation under § 11(e) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79 et seq.

No question but that Standard employed James P. McGranery on November 23, 1954 as an expert witness, in connection with Standard's defense against a claim for legal services filed by the law firm of Guggenheimer & Untermeyer in connection with the reorganization of Standard.

G & U's fee application was based on services rendered in behalf of stockholders of Standard. The history of Standard's long stay before the SEC and the

reorganization courts is noted in the margin.[1] At the hearings before the SEC on G & U's application for fees (they sought $3,500,000.00) that law firm produced three experts who testified as to the value of G & U's services. In order to marshal a defense against the potential of this testimony Standard determined to employ three other experts in the field to combat this evidence. Three eminent members of the profession were consulted. They were Francis T. P. Plimpton, Esq., George Roberts, Esq., and (former Justice) Owen J. Roberts. All indicated their willingness to testify in the proceedings. Mr. Justice Roberts later notified Standard he was about to undergo a cataract operation and begged leave to withdraw from his employment. Standard then decided to consult with Judge McGranery (former Congressman, Assistant to the Attorney General, District Judge for the Eastern District of Pennsylvania, and later Attorney General of the United States). Judge McGranery was approached and he agreed to study the record of the proceedings on the fee applications and testify as an expert witness on Standard's behalf in place of Mr. Justice Roberts. He began to study the record and commenced his employment.

Here is the crux of the difficulty: McGranery takes the position his contract of employment meant one thing, Standard claims to the contrary and his employment as an expert witness meant another.

G & U settled its claim of $3,500,000 with Standard for $861,000 with the approval of the SEC and upon application to and approval by this court. The settlement *inter partes* occurred one week after Judge McGranery had been employed. He together with the other two expert witnesses which Standard had hired were never called to testify. Thereafter, Judge McGranery sent his bill to Standard for $10,000. It is his

contention he was employed at that fixed figure and had commenced to perform his services when he was notified of the settlement. Standard attempted to negotiate with him for a settlement of his charges at a reduced figure. As stated, Judge McGranery's position is the agreement of employment provided for a base figure of $10,000 (not for legal services) for his services as an expert witness without conditions of any kind—regardless of settlement of the G & U claim for fees or otherwise. His position was adamant.

Standard then filed an application with the SEC requesting that the McGranery matter be set down for hearing, as a part of the reorganization and liquidation plan of Standard, and for the Commission to determine an appropriate "fee" for Judge McGranery. Standard appeared at the hearing, presented its evidence as to Judge McGranery's claim. Judge McGranery was notified of the hearing, but he refused to file an application for a "fee" with the SEC for approval of his claim. He did not appear at the hearing but he did send a letter to the SEC stating it had no jurisdiction over his claim against Standard because it had hired him as an expert witness and it was simply a matter of a private contract of employment between him and Standard.

1. I think the SEC does have jurisdiction to pass on the claim of Judge McGranery—not as a claim for a lawyer's fee—but only as a claim based upon a contract of employment to appear and testify as an expert witness. In its Memorandum Opinion of January 11, 1956, the SEC keeps referring to the "claim by McGranery for a retainer or fee for his services as a proposed expert witness in connection with the reorganization" and the SEC speaks of "reasonable compensation"; there is a finding "there was no agreement, expressed or

---

1. In re Standard Gas & Electric Co., D.C. Del., 16 F.R.D. 221; In re Standard Gas & Electric Co., D.C.Del., 63 F.Supp. 876; In re Standard Gas & Electric Co., D.C.Del., 59 F.Supp. 274, reversed 3 Cir., 151 F.2d 326, certiorari denied 327 U.S. 796, 66 S.Ct. 820, 90 L.Ed. 1022.

implied" between Judge McGranery and Standard.

2. The record which is before me (which I am called upon to review) is clearly inadequate. The SEC made its determination in an *ex parte* proceeding. True, Judge McGranery was invited to appear at the hearing and he did, in fact, absent himself. But, this was because in his understanding he had a private contract with Standard and with which the SEC had no concern.

Here, I think Judge McGranery was wrong. The SEC has jurisdiction to determine proper lawyer's fees and other expenses pursuant to its powers under § 11(e) of the Act to approve only such plans (and any integral part of a plan) as the SEC shall find to be "fair and equitable". Security and Exchange Comm. v. Drexel & Co., 348 U.S. 341, 347, 75 S.Ct. 386, 99 L.Ed. 376. And this administrative jurisdiction includes, I think, jurisdiction to examine charges of expert witnesses whether their employment is based on express or implied contracts.

3. But, the bald fact exists— the record before me is not satisfactory. Judge McGranery should be given a further opportunity to appear before the SEC and adduce evidence of his contract of employment with Standard. If such a contract exists I do not decide at this time whether the SEC has administrative power to pronounce a remittitor of any particular sum agreed upon by the contract—whether expressed or implied. If there was no such agreement of employment, then I think the SEC's present *quantum meruit* approach on the basis of services actually rendered by Judge McGranery, plus the prestige of his name and former positions, which Standard seemed so eager to seek and utilize, resulting in the award of $500 to him, was palpably inadequate. In fact (although a fresh record may indicate otherwise), it would appear the SEC simply adopted that sum because it was suggested by one of the officers of Standard.

The present application of the SEC for an order of enforcement will be denied. The matter will be remanded to the SEC for further proceedings not inconsistent herewith.